Williams, J.
 

 Who was elected president of the council of the city of Cleveland?
 

 There are three distinct claims. Artl contends that he was elected by a plurality vote on the first ballot; DeMaioribus that he was chosen by a majority vote on the fifteenth ballot; and Reed that by change of vote after the fifteenth ballot and before the announce
 
 *205
 
 ment of the result by the chair he was elected by a majority vote.
 

 The contention of Artl is founded on the first paragraph of the syllabus in
 
 State, ex rel. Calderwood,
 
 v.
 
 Miller,
 
 62 Ohio St., 436, 57 N. E., 227, 78 Am. St. Rep., 732, which reads:
 

 ‘•'1. Where all of the members of a city council, in a city of the second class, vote to elect a city clerk, and one of the candidates voted for receives a plurality of the votes cast, such candidate is duly elected, and a formal declaration of the result is not necessary to fix his right to the office; and thereafter it is not within the power of any member of the council to change the result by changing his vote.”
 

 We are confronted with an interpretation of this syllabus. Primarily syllabi are of two classes. In the one class, generally speaking, the declaration of legal principles is in the abstract; in the other class, there is a concrete statement of the facts involved accompanied by an assertion of the holding of the court. The syllabus quoted is of the former class and presents an abstract statement of the law.
 

 In evaluating a syllabus to determine its legal significance a true sense of proportion requires that the declaration of principle be considered as pertinent to the particular ease in which it is made. A legal abstraction may be sound as applied to one state of facts and wholly inapplicable with the factual status otherwise. It is a cardinal principle of legal interpretation that an abstract syllabus must be read in the light of the essential facts.
 

 The syllabus quoted has been the law in Ohio for more than thirty-six years and this court accepts it as fundamentally sound in conception. The facts in the instant case, however, are different, and that case may therefore be distinguished. Nevertheless the legal principles pronounced have some bearing on the case at bar. In brief, the syllabus, being interpreted, con
 
 *206
 
 tains three propositions of law: First, a plurality vote is sufficient to elect; second, when the choice is once legally made, a formal declaration of the result is not necessary to fix the right to the office; and third, the right to change one’s vote does not exist. In that case by common consent of council a plurality was deemed sufficient and there was no request for nor attempt to take a further ballot; and, again, no rule nor consent for the change of vote appears to have been existent. In fact two councilmen protested the change of votes. A like analysis may be made of
 
 State, ex rel. Kohler, Atty. Genl.,
 
 v.
 
 Anderson,
 
 45 Ohio St., 196, 12 N. E., 656. In
 
 State, ex rel. Shinnich,
 
 v.
 
 Green,
 
 37 Ohio St., 227, the president of council was elected by a majority of the votes actually cast, nine of the eighteen members voting for him and nine refusing to vote. That case therefore stands on a different footing.
 

 In the instant case by an announcement from the chair before the balloting began and before each successive ballot and by common consent the election was to be determined by a majority vote, as had been done on several former elections of a president of council. Just before the fifteenth ballot, by a vote of thirty-two to one, council adopted a motion to adjourn after two more ballots were taken, thus confirming its action in not accepting a plurality as decisive. Since the acquiescence continued until one of the candidates received a majority, it was then too late to claim that one of the candidates had been elected by a plurality on an earlier ballot. If election by a majority thus effected could be upset through court action, many suits might be brought by candidates for councilmanic positions who received a plurality on an earlier ballot by the council, and those apparently elected by a majority vote be unseated. No doubt such a situation exists in many cities of the state. Moreover, if a majority vote is accepted as necessary to elect, the members may
 
 *207
 
 vote differently than if a plurality only is required. For instance complimentary votes may he cast in the early stage of the balloting. It would be unfair to allow a minority to prevail contrary to a common understanding that the balloting was to continue until a candidate received a majority.
 

 The council is a deliberative body with prerogatives limited only by positive law. As such it had full power to make reasonable rules governing the election. In advance of a ballot, it could determine whether the election should he by plurality or by majority. It could adopt a rule permitting change of votes after a ballot hut before announcement of the result by the chair. Neither custom nor practice of previous councils is of determinative value. By common consent and approval it was understood and agreed that the election should he by a majority vote and therefore a majority determined the choice.
 

 On the other hand no rule had been adopted permitting a change of votes before announcement of the result. The council is empowered to vary legislation by amendment or repeal as frequently as it may desire; but the position of president of the council is a public office and when the appellant received a majority of the votes he was elected and, as the result was not contingent upon the right of a member to change his vote under a rule previously adopted, he was entitled to the office and could not be deprived of his right thereto except by unanimity of action on the part of the members, among whom he was numbered. The change of votes could not lawfully be made, as unanimous consent thereto was lacking. To permit the change under the circumstances would he like altering the rules of a game so as to affect the result of. a play after its completion. When the chair announced the result there was no appeal from the decision. However, whether there was an attempt to take such an appeal is a disputed fact. Had such an appeal been taken it
 
 *208
 
 would have been of no avail since it was not even essential that the chair declare the result under the circumstances. To take a vote on such an appeal would be equivalent to taking an additional ballot. A candidate once legally elected could not be deprived of his office in that way.
 

 The contention of Artl seems to be that he was elected on the first ballot by a plurality and that, as he did not know that under the law he was elected, he could not by subsequent conduct waive his rights. This court has already disposed of this contention by making it plain that under the existing circumstances there could be no election by a mere plurality. As this court holds that Artl had no subsisting right to the office at any time, the question of waiver is inconsequential.
 

 The suggestion has been made that the whole election is invalid because the clerk was not vested with power to act as presiding officer and the proceedings were fatally contaminated with indecorum in conducting the alleged election. The council had power to determine who should preside over its deliberations and whether the clerk held the chair
 
 de jure
 
 or
 
 de facto
 
 could not alter the result. If disorderly proceedings should be held to invalidate an election otherwise legal, some legislative bodies could never organize; and what is more a minority by rowdyism could forestall action by a worthy majority. The contention that the election was invalid on these grounds is not well founded.
 

 DeMaioribus received the required majority and un- ' der the principles pronounced the change of votes was not warranted by law. He was therefore duly elected.
 

 Judgment reversed and final judgment for appellant.
 

 Stephenson, Jones, Matthias and Day, JJ., concur.
 

 Weygandt, C. J., and Zimmerman, J., dissent.