THE STATE, EX REL. CORRIGAN, *v*. TUDHOPE.

(No. 74-658—Decided February 5, 1975.)

58

*Mr. H. E. Whitaker,* law director, *Messrs. Kelley, Mc-Cann & Livingstone* and *Mr. Walter C. Kelley,* for relator.

*Messrs. Baker, Hostetler & Patterson* and *Mr. Wayne C. Dabb, Jr.,* for respondent.

*Per Curiam.* The court is confronted with two issues for determination in this case: (1) Does the president of council have the power to vote for a nominee to fill a vacant council seat? (2) Must a nominee to a vacant council seat receive only a majority vote of all the remaining elected councilmen in order to be elected?

In determining whether the council president can vote, we look first to the Berea Charter. Section IV, in pertinent part, provides:

"Item 1: Membership, Election, Qualifications and Term

"The legislative power of the city shall be vested in a council consisting of seven members. * * * Should any councilman elected to represent a ward move from that ward his position shall become vacant and shall be filled as provided in this Charter. * * *

"Item 2: President of Council

"The President of Council shall be elected by a popular vote, have the qualifications of councilmen-at-large, and succeed to the office of Mayor [in certain circumstances] * * *.

"* * * [H]is duties shall be to preside at all meetings of council, appoint various council committees, perform such duties as may be imposed by council upon its presiding officer and such duties as are imposed on him by this Charter * * *.

"Item 3: Organization and Duties
"* * *

"* * * All vacancies in council shall be filled by council itself. If the council fails within thirty (30) days to fill the vacancy the power of council shall terminate and the Mayor shall fill the vacancy by appointment. * * *"

As seen from our examination of the pertinent charter provisions, the council president is not granted the right to vote, but neither is there an express denial of that right.

Respondent argues that since the council is not limited to the charter, but has any additional powers not in conflict with that charter which are set forth in the laws and Constitution of the state, R. C. 733.09 should be applied to allow the president to vote. See Sections II and IV of the Berea Charter.

R. C. 733.09 provides that:

"The president of the legislative authority of a city shall be elected for a term of two years, commencing on the first day of January next after his election. He shall be an elector of the city, and shall preside at all regular and special meetings of such legislative authority, but he shall have no vote therein except *in case of a tie*." (Emphasis added.)

It is this court's position that a "tie" means that in a two-candidate race each candidate has received the same number of votes. We do not accept the contention of respondent that an impasse such as the situation before us is also a "tie" as provided for in R. C. 733.09.[1] Thus, we need not come to the question whether R. C. 733.09 applies to a charter city, since it does not apply to the present situation.

Respondent argues further that the right of the presi-

---

[1]Indeed, that contention seems to be expressly covered by the Berea Charter, Item 3, Article IV.

"* * * If the council fails within thirty (30) days to fill the vacancy the power of council shall terminate and the Mayor shall fill the vacancy by appointment. * * *"

This provision might well be argued to preclude the council president from voting in this type of situation at any time; it at least applies to an impasse.

dent to vote was upheld by a vote of council. After the president had announced his intention of voting and an objection was raised, three members of council voted to uphold the president and the two complaining councilmen refused to vote. Respondent argues that their failure to vote must be considered an ''acquiescence in the choice of those who do vote,'' even though they had raised a question to the objectionable procedure. *State, ex rel. Shinnich,* v. *Green* (1831), 37 Ohio St. 227. We also infer from that argument that respondent considers the vote the same as unanimous consent, since no less is required to, in effect, change the rules once a vote had been taken. *State, ex rel. Reed,* v. *DeMaioribus* (1936), 131 Ohio St. 201.[2]

Since it is apparent from the record that the councilmen who refused to vote were opposed to allowing the president to vote (at least until a ruling on the procedure was made by the Law Director), we do not think that this was merely an opposition to the *mode* of voting. *Shinnich, supra.* To allow the president to vote merely on authority of that case would seem to be an exaltation of form over substance.

For the foregoing reasons, we decide that in this case the president of council had no right to vote.

The validity of the election thus turns on a determination of the number of votes required to elect a nominee to a vacant council seat.

Relator argues that since the Berea Charter requires each ordinance or resolution before the council to be passed by a concurrence of a majority of all its elected members, and, since filling a vacated council seat is ''an action of equal or greater dignity,'' the majority vote requirement should be applied to filling a vacated seat.

Relator also argues that even though the majority

---

[2]We do not perceive an intention to allow the president to vote to have been agreed to by common acquiescence from his statement that:

"Voting will continue until one nominee receives enough votes to be elected *or until the Chair determines a stalemate has been reached.*" (Emphasis added.)

vote requirement is not found to be implicit in the Charter, the members of council imposed such requirement immediately before the election by common acquiescence in the president of council's statement.

The president said that: "[E]lection shall be by a majority vote of council—a plurality will not elect." Since there was no objection to that statement, relator asserts that *State, ex rel. Reed,* v. *DeMaioribus, supra,* controls.

In *DeMaioribus,* the charter of the city provided the procedure for electing a council president, but contained no provision as to the number of votes required to elect. The presiding officer announced that a majority vote would be required, and there was common acquiescence to that announcement. Paragraph two of the syllabus states that:

"The number of votes necessary for a choice could be determined by a resolution duly adopted, or by common consent. Under the instant circumstances a majority was required by such consent."

Respondent argues that *DeMaioribus* is clearly distinguishable, and that since the city of Berea has formally adopted rules of procedure, the common acquiescence is ineffective. Respondent bases his argument on *State, ex rel. Smith,* v. *Nazor* (1939), 135 Ohio St. 364.

In *Nazor,* the Ironton city council was to elect a nominee to fill a vacant council seat. Upon advice of the city solicitor, the council decided that the nominee receiving the highest number of votes would be elected, following the procedure usually pursued at elections. On the first ballot, Smith received two votes and three others received one vote each. The chairman declared that no one had been elected and the balloting continued until Nazor received three votes, Smith received two and Markin received one. Then the chairman announced that Nazor had "received the plurality of votes cast as required by law" and was elected. Nazor's bond was approved and he was installed in the position. Smith then brought a quo warranto action challenging the election.

In *Nazor,* relator Smith argued that *DeMaioribus* was

controlling and that he had been elected on the first ballot. The court disagreed, finding that the council had specifically adopted a rule which required a majority vote of all members present in order to transact business.[3] Since that rule had been adopted, and since a specified procedure for amendment (not including common acquiescence) had also been adopted,[4] the majority vote rule remained in effect and *DeMaioribus* did not apply.

Respondent argues that Item 5 of Section IV of the Berea Charter controls all rule-making procedure. That item, in pertinent part, provides:

"* * * No by-law, ordinance, or resolution of a general or permanent nature, or granting a franchise, or creating a right, or involving the expenditure of money, or the levying of a tax, or for the purchase, lease, sale, or transfer of property, shall be passed unless it has been fully and distinctly read on three (3) different days, and with respect to any such by-law, ordinance, or resolution, there shall be no authority to dispense with this rule, except by a three-fourth (¾) vote of all members elected to the council, taken by yeas and nays on each by-law, resolution, or ordinance, and entered on the journal. * * * No ordinance or resolution shall be passed without the concurrence of a majority of all members elected to the council. * * *"

In addition, Item 3, Section IV, in pertinent part, provides:

"* * * The council shall determine its own rules and order of business * * *." Pursuant to that item, the coun-

---

[3]Rule 5 provided:

"A majority of all members of the council shall constitute a quorum, *and the vote of the majority of those present constituting a quorum, shall be sufficient to transact business in the absence of other members* * * *." (Emphasis added.)

[4]Rule 29 provided:

"These rules may be amended or altered, or new rules adopted by a majority of all members elected or appointed thereto, at any meeting of the council, on report of the proper committee to whom the subject has been previously referred."

cil enacted a set of procedural rules. However, no procedure in those rules applies to an election to fill a vacancy on council.

This court finds neither of the above-cited items requires the council to carry out a certain procedure prior to determining how to elect a replacement to council. The Berea council is in the position of having no constitutional, statutory or charter provision which mandates the number of votes required to fill a vacancy.

Since the situation before us is indistinguishable from that found in *State, ex rel. Reed,* v. *DeMaioribus, supra* (131 Ohio St. 201), we base our decision on, and reaffirm, that opinion, wherein, at page 207, the court said:

"The council is a deliberative body with prerogatives limited only by positive law. As such it had full power to make reasonable rules governing the election. In advance of a ballot, it could determine whether the election should be by plurality or by majority. * * *"

Council acquiesced when the president announced the vacancy would be filed by a majority vote of the remaining councilmen. The vacancy could be filled only by following that procedure.

Here, since council did not follow its chosen procedure, the respondent was improperly elected.

*Writ allowed.*

CORRIGAN, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.

O'NEILL, C. J., and HERBERT, J., concur in the judgment only.