THE VILLAGE OF WOODRIDGE, Plaintiff-Appellant, v. THE COUNTY OF DU PAGE *et al.*, Defendants-Appellees. (Du Page Bank and Trust Company, Counterplaintiff; The County of Du Page, Counterdefendant).

Second District   No. 2—85—0567

Opinion filed June 26, 1986.

Gerald M. Gorski and Thomas W. Good, both of Gorski & Fawell, Ltd., of Wheaton, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, of counsel), for appellees.

JUSTICE SCHNAKE delivered the opinion of the court:

Plaintiff, village of Woodridge (Woodridge), brought an action for declaratory and injunctive relief against the defendants, county of Du Page (county) and Du Page Bank and Trust Company (Du Page Trust), challenging the validity of a zoning ordinance passed by the county board. Plaintiff appeals from the judgment of the circuit court which denied its motion for summary judgment and granted defendant county's cross-motion for summary judgment. On appeal, plaintiff contends that the ordinance is void because the chairman of the county board illegally cast his vote for the ordinance absent a "tie," in violation of section 7 of "An Act relating to the compensation and election of county boards in certain counties" (Act) (Ill. Rev. Stat. 1983, ch. 34, par. 837).[1] For the reasons set forth below, we reverse.

The following facts form the basis of this appeal. Du Page Trust, a defendant in this action, but not involved in this appeal, filed an application with the county requesting rezoning and other zoning relief with respect to land to which it holds title as trustee. This land adjoins Woodridge. The Du Page County zoning board of appeals held a public hearing on the application on April 1, 1985. On April 18, 1985, Woodridge adopted a resolution which protested the proposed rezoning pursuant to the provisions of section 5 of "An Act in relation to county zoning" (Zoning Act) (Ill. Rev. Stat. 1983, ch. 34, par. 3158).[2] Under the Zoning Act, once such a resolution is filed in protest to an application, a three-fourths favorable vote of all county board members, rather than a simple majority, is needed to pass the subject zoning ordinance.

On April 24, 1985, the county board, which includes 25 members and one chairman, voted on the question of Du Page Trust's application. The ordinance received 19 "ayes" and four "nayes"; there was one abstention, and two members were absent. Counted as one of the favorable votes on the ordinance was the "aye" vote of the chairman. On the basis of this vote, the county board passed the ordinance and granted the requested relief. On May 15, 1985, plaintiff filed its complaint for declaratory judgment and injunctive relief challenging the validity of the ordinance.

The sole issue on appeal is whether the chairman's vote violated section 7 of the Act. Plaintiff contends that as a "tie" did not exist,

---

[1]"In counties over 450,000 population and under 3,000,000 population, the chairman shall be elected as chairman without having been first elected to the county board. Such chairman shall not vote on any question except to break a tie vote."

[2]"[The] amendment shall not be passed except by the favorable vote of ¾ of all the members of the county board."

the chairman's vote was illegally cast. The defendant responds that immediately prior to the chairman's vote, 18 of the 25 members had already voted in favor of the ordinance. Pursuant to the plaintiff's resolution, the ordinance needed an extraordinary majority, or 19 votes, to pass. It is the defendant's position that while there was no "tie" in the conventional sense, the trial judge correctly interpreted the statute as enabling the chairman to cast the "decisive" vote under circumstances where an extraordinary, rather than a simple majority, is required, in order to allow the business of governing to continue.

On appeal, it is our task to determine whether the trial court's grant of summary judgment was proper. Summary judgment is properly granted when the pleadings, depositions, and admissions, on file, together with any affidavits, establish that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *DeFoor v. Northbrook Excess & Surplus Insurance Co.* (1984), 128 Ill. App. 3d 929, 932.

Since the facts of the instant case are undisputed, we are not concerned with the first level of inquiry in determining the propriety of the trial court's grant of summary judgment. There is clearly no genuine issue as to any material fact. The only issue before us is one of statutory construction, namely whether pursuant to section 7 of the Act, a "tie" existed, necessitating the chairman's vote. In order to find that the trial court correctly granted the defendant's cross-motion for summary judgment, we must determine that a tie did, in fact, exist.

■ The first canon of statutory interpretation is to ascertain and give effect to the legislative intent as expressed in the statute. (*City of East Peoria v. Group Five Development Co.* (1981), 87 Ill. 2d 42, 46.) Provisions of the statute should be read in light of the statute as a whole. (*Winks v. Board of Education* (1979), 78 Ill. 2d 128, 135.) The legislative intent usually appears from a consideration of the statute's language which affords the best means of its exposition. (*Illinois Power Co. v. Mahin* (1978), 72 Ill. 2d 189, 194.) The words used in a statute are assumed to have been intended to retain their ordinary and properly understood meanings. (*Kozak v. Retirement Board* (1983), 95 Ill. 2d 211, 215.) If the legislative intent can be ascertained from the language of the statute, the language prevails and will be given effect; a court may not declare that the legislature did not mean what the plain language of the statute imports. *Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350.

A court, however, is not bound by the literal language found in a statute where the language would defeat the legislature's obvious and clearly expressed objective or purpose. (*People v. McCoy* (1976), 63 Ill.

2d 40, 45.) Words may, thus, be modified, altered, or supplied, to obviate repugnancies or inconsistencies from the legislative intent. (*People v. Bratcher* (1976), 63 Ill. 2d 534, 543.) As this court stated in *People v. Gibson* (1981), 99 Ill. App. 3d 616, *rev'd on other grounds* (1982), 91 Ill. 2d 562, "courts are generally cautious about adding words to a statute, [but] *** will read into the meaning of a statutory provision a qualifying or expanding expression [which is] plainly implied by the general context of the enactment, which has been palpably omitted and which is essential to prevent the legislative purpose from failing in one of its important aspects." (99 Ill. App. 3d 616, 620.) Where two constructions of a law are available, the one which would produce absurd results and render the operation of the law difficult should be avoided. *Balmes v. HIAB-FOCO, A.B.* (1982), 105 Ill. App. 3d 572, 575.

■ Both parties have acknowledged that this is a case of first impression. In construing a statutory provision not yet judicially interpreted, a court is guided by both the plain meaning of the language of the statute, as well as the legislative intent. (*Interlake, Inc. v. Industrial Com.* (1983), 95 Ill. 2d 181; *Griffin v. City of North Chicago* (1983), 112 Ill. App. 3d 901.) Thus, the trial judge found that although the language of the statute appeared to limit the chairman's ability to vote to tie-breaking situations only, it was the intent of the legislature to authorize the chairman to also cast the "decisive" vote. We disagree.

■ It is well settled that words used in statutes are intended to retain their popularly understood meaning. (*Kozak v. Retirement Board* (1983), 95 Ill. 2d 211, 215.) The word "tie" means "to make or have an equal score within a contest." (Webster's Third New International Dictionary, at 2391 (1971).) Clearly a vote of 18-4 is not an "equal" score in the popular sense. Furthermore, when language in a statute is certain and unambiguous, it is not proper for a court to depart from the plain meaning by reading into the statute exceptions, limitations, and conditions which conflict with the legislative intent. *Village of Oakwood Hills v. Diamond* (1984), 125 Ill. App. 3d 58.

The defendant agrees that in the present case the vote was not, in the popular or ordinary sense, a tie. It contends, however, that in situations such as the present case, the literal definition simply does not give effect to the legislature's intent, that of allowing the chairman to resolve issues when the board is deadlocked, and permitting the business of governing to continue.

We are unable, however, to find any support for the defendant's position. Indeed, the fact that the legislature has never amended section 7 of the Act supports the inference that the legislature intended its language to be confined to its plain and ordinary meaning.

Furthermore, we find misplaced the defendant's reliance on *Launtz v. People ex rel. Sullivan* (1885), 113 Ill. 137, for the broad proposition that the court will consider a vote a "tie," in order to give effect to legislative intent. In *Launtz*, a legislative enactment allowed the mayor to vote only in the case of a tie. In a session to approve the defendant's bond as city treasurer, four of the eight members voted to approve and four refused to vote. The major also voted to approve and cast the decisive vote. The appellate court rejected the plaintiff's contention that the trial court erred when it approved the bond, in the absence of the vote of five of the counsel members. Specifically, it held that the four silent votes would be interpreted as negative votes. This created a conventional tie of 4-4 and, thus, allowed the mayor to cast the tie-breaking vote. In the present case, however, there is no such tie. Indeed, we do not believe this situation presents, as the defendant claims, a deadlock because even absent the subject ordinance, the business of governing can continue. See also *State ex rel. Corrigan v. Tudhope* (1975), 41 Ohio St. 2d 57, 59, 322 N.E.2d 675, 677 (a 3-2 voting "impasse" held not to be a "tie" so as to necessitate counsel president's tie-breaking vote).

Our research has disclosed a decision in another jurisdiction which supports the strict construction of the word "tie" on facts similar to the present case. (See *City of Centerville v. Adkisson* (Tex. Civ. App. 1956), 291 S.W.2d 798, 800.) There defendants had attacked the validity of an ordinance which had been passed by an affirmative vote of three of the five aldermen and the mayor. The defendant argued that a statute existed which required the consent of two-thirds of the aldermen elected in order to pass an ordinance, and the mayor could not vote except to break a tie. The city responded that the three aldermen and the mayor's vote totalled four votes, or two-thirds of the six members of the total council. The appellate court held, however, that the mayor could not vote, absent a tie; because he could not vote, the court could not count his vote in determining whether the requisite two-thirds voted in favor of the ordinance.

◼ Similarly, in the present case, the statute clearly states that the chairman shall not vote on any question except to break a tie. We conclude that the defendant has presented no persuasive authority to rebut the clear language of the statute.

Accordingly the judgment of the circuit court is reversed, and summary judgment entered in favor of plaintiff Village of Woodridge.

Reversed.

NASH, P.J., and REINHARD, J., concur.