STEPHEN PIATAK, Plaintiff-Appellant, v. BLACK HAWK COLLEGE DISTRICT No. 503, Defendant-Appellee.

Third District   No. 3—94—0585

Opinion filed March 14, 1995.

Wayne B. Giampietro and James P. Popp, both of Witwer, Burlage, Poltrock & Giampietro, of Chicago (Daniel Musca, of counsel), for appellant.

Robert C. Long and Fay Hartog-Rapp, both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (Ugne T. Adams, of counsel), for appellee.

JUSTICE BRESLIN delivered the opinion of the court:

This appeal raises the question of whether section 3B—5 of the

Public Community College Act (110 ILCS 805/3B—5 (West 1992)) confers upon a dismissed faculty member the right to "bump" a less senior faculty member from a teaching position upon gaining competency in the less senior faculty member's field of instruction. We hold that section 3B—5 confers no such "bumping" rights and therefore affirm the judgment of the circuit court.

In July 1984, the defendant, Black Hawk College (College), hired the plaintiff, Stephen Piatak, to teach drafting courses at the East Moline Correctional Center. Piatak achieved tenure in July 1987. Budget constraints forced the College to discontinue its drafting program at the correctional center in 1991. Consequently, the College's board of trustees (Board) informed Piatak that, since he was not competent to fill other teaching positions, his employment with the College would be terminated at the close of the academic year in June 1991.

Upon receiving notice of his termination, Piatak requested assignment to a position in the College's computer science department. Piatak informed the Board that he had taught Computer Science 101 and had finished approximately one-half the coursework required for a master's degree in computer science. The College rejected Piatak's request on the grounds that he did not meet the requirements for competency as a computer science instructor.

In May 1992, Piatak was awarded a master's degree in computer science and thereby met the minimum requirements for competency as a computer science instructor. He requested a position within the computer science department for the 1992-93 academic year. Although there were no unfilled positions in the computer science department, Piatak asked the College to assign him the position then being held by Ilga Higbee, an instructor who had taught in the department since August 1989. The College refused Piatak's request, explaining that he did not possess the minimum requirements for competency in March 1992, when the College was required to make its faculty appointments for the 1992-93 academic year. Higbee achieved tenure in August 1992.

The College informed Piatak in October 1992 that he had met the requirements for competency as a computer science instructor. However, when Piatak again requested appointment to Higbee's position for the 1993-94 academic year, the College refused his request. Piatak then brought this suit for declaratory relief. The circuit court granted the College summary judgment and Piatak appealed.

Article IIIB of the Public Community College Act (Act) sets forth the terms and conditions upon which a tenured faculty member may be relieved of employment. (See 110 ILCS 805/3B—1 *et seq.* (West

1992).) Section 3B—2 provides that a tenured faculty member has a vested contract right in continued employment subject to termination only for just cause or due to a reduction in the number of faculty members or a discontinuance of a particular type of teaching service or program. (110 ILCS 805/3B—2 (West 1992).) Dismissals based upon a reduction in the number of faculty members or the discontinuance of an academic program must be made in accordance with section 3B—5, which provides in part:

> "For the period of 24 months from the beginning of the school year for which the faculty member was dismissed, any faculty member shall have the preferred right to reappointment to a position entailing services he is competent to render prior to the appointment of any new faculty member; provided that no nontenure faculty member or other employee with less seniority shall be employed to render a service which a tenured faculty member is competent to render." (110 ILCS 805/3B—5 (West 1992).)

Piatak was entitled to this 24-month preferred right to reappointment because he was dismissed due to the discontinuance of the drafting program at East Moline Correctional Center.

Piatak argues that the right to reappointment conferred by section 3B—5 extends to any position a dismissed faculty member becomes competent to fill if the position is being held by a less senior faculty member. He reads the phrase "shall be employed" to mean that the College shall not "have in its employ" a teacher with less seniority than he during the 24-month period following his dismissal. Under this interpretation, Piatak would be entitled to "bump" Higbee from her position because, although Higbee has tenure, Piatak is a tenured faculty member with more seniority than Higbee and is competent to teach computer science courses.

The College's position is that the legislature used "shall be employed" as a synonym for "shall be hired." Under this interpretation, a dismissed faculty member's right to reappointment extends only to "open" positions—that is, positions that have become available through retirement, dismissal for just cause, the creation of a new program, or otherwise. The College argues that because there were no open computer science positions during Piatak's 24-month reappointment period it was not obliged to assign Piatak a teaching position. This question of statutory interpretation is one of first impression. Since the question was determinable as a matter of law, it was appropriate for the circuit court to decide the question on a motion for summary judgment. See *Steinmetz v. Board of Trustees of Community College District No. 529* (1978), 68 Ill. App. 3d 83, 385 N.E.2d 745.

The primary rule of statutory construction is to ascertain and effectuate the legislature's intent. (*Frame v. Board of Trustees of Spoon River Community College* (1991), 212 Ill. App. 3d 617, 571 N.E.2d 519.) The initial source for determining legislative intent is the plain meaning of the language used, and where unambiguous, the plain meaning of the language controls. (*Board of Education of Minooka Community High School District No. 111 v. Carter* (1983), 119 Ill. App. 3d 857, 458 N.E.2d 50.) The courts must take the words found in a statute in their ordinary usual meaning and give them a sensible meaning consonant with the context in which they are used. *La Salle National Bank v. Village of Burr Ridge* (1967), 81 Ill. App. 2d 209, 225 N.E.2d 33.

The dispute before us may be resolved solely with reference to the sentence in section 3B—5 that confers reappointment rights, which we repeat for the sake of discussion:

> "For the period of 24 months from the beginning of the school year for which the faculty member was dismissed, any faculty member shall have the preferred right to reappointment to a position entailing services he is competent to render prior to the appointment of any new faculty member; provided that no nontenure faculty member or other employee with less seniority shall be employed to render a service which a tenured faculty member is competent to render." (110 ILCS 805/3B—5 (West 1992).)

We find that the College's interpretation—that "shall be employed" means "shall be hired"—is the only plausible reading of this sentence in view of the manner in which it is constructed.

The first clause of the sentence is a main clause, which means that it can stand alone as a complete sentence. The second clause, which follows the semicolon, is a dependent clause. The relation between a main clause and a dependent clause is determined from the particular subordinate conjunction which joins them. (See Edward A. Dornan & Charles W. Dawe, The Brief English Handbook 22-23 (4th ed. 1994).) In this case the subordinate conjunction is "provided that," which indicates that the dependent clause is placing a condition upon the operation of the main clause. See Margaret Shertzer, The Elements of Grammar 46 (1986).

The main clause in the sentence in question provides that any dismissed faculty member, regardless of tenure, has a preferred right to reappointment before any new faculty members are appointed. This preferred right unquestionably relates to open positions because a community college would not have occasion to appoint a new faculty member unless a position has become available. Therefore, it is clear that the main clause confers upon dismissed faculty members

the right to reappointment to open positions which become available following their dismissal.

The dependant clause places a condition upon this right. The condition is that tenured faculty members are to be preferred over nontenured faculty members and other employees with less seniority. Since the main clause applies only to open positions becoming available following a faculty member's dismissal, the condition stated in the dependent clause relates only to open positions as well. Accordingly, section 3B—5 must be construed to mean that a dismissed faculty member has a right to reappointment to an open position prior to the appointment of a new faculty member, and that a tenured faculty member will be appointed to that position before a nontenured faculty member or employee with less seniority is appointed.

The interpretation Piatak suggests is flawed because it ignores any relationship between the statutory sentence's main and dependant clauses. In the case at bar, Higbee was not a new faculty member and the position she held did not become available following Piatak's dismissal. If Piatak had a right to Higbee's position, that right had no relation whatsoever to Piatak's reappointment rights over new faculty members. We think that, had the legislature intended to confer upon dismissed faculty members the right to reappointment to positions currently being held by other faculty members, it would not have done so in a dependant clause that conditions a faculty member's right to reappointment to open positions.

Piatak argues that the interpretation we adopt would circumvent the underlying purposes of the tenure statutes. We are mindful that the courts need not adhere to a literal reading of statutory language where such a reading would defeat the legislature's obvious and clearly expressed purposes. (See *Village of Woodridge v. County of Du Page* (1986), 144 Ill. App. 3d 953, 494 N.E.2d 1262.) We find, however, that our reading of section 3B—5 is consistent with the statute's underlying purposes.

In construing the tenure provisions of the School Code, the supreme court found that the legislature created tenure "to provide continuity and stability for students; provide some degree of job security, thus affording teachers the ability to pursue a career free from arbitrary hiring and firing; attract teachers of high quality; and retain experienced teachers." (*Johnson v. Board of Education of Decatur School District No. 61* (1981), 85 Ill. 2d 338, 344, 423 N.E.2d 903, 906.) The legislature enacted the Public Community College Act's tenure provisions to further these same goals. See *Biggiam v. Board of Trustees of Community College District No. 516* (1987), 154 Ill. App. 3d 627, 506 N.E.2d 1011; *Board of Trustees of Community*

*College District No. 508 v. Taylor* (1983), 114 Ill. App. 3d 318, 448 N.E.2d 1171.

Section 3B—5's preferred right to reappointment as construed by this court would adequately protect dismissed faculty members' interests in job security. For example, in this case Piatak would still have a right to reappointment in the event a position opened in either the College's drafting or computer science department during the 24-month period following his dismissal. However, unlike Piatak's interpretation, the interpretation we adopt would not create an additional avenue by which any teacher, regardless of experience, could lose her position. This interpretation would thus benefit students by providing some measure of stability within the faculty. Moreover, it would strike a reasonable balance between the interests of dismissed teachers and teachers who currently hold positions. Therefore, we find that the construction of section 3B—5 we adopt today is consistent with the underlying purposes of the tenure statutes.

In sum, we hold that the preferred right to reappointment conferred upon dismissed faculty members by section 3B—5 of the Public Community College Act extends only to open positions which become available following a faculty member's dismissal. Accordingly, we affirm the judgment of the circuit court of Rock Island County.

Affirmed.

STOUDER, P.J., and SLATER, J., concur.