**2020 IL 125535**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 125535)

CHERYL BARRALL *et al.*, Appellees, v. THE BOARD OF TRUSTEES OF
JOHN A. LOGAN COMMUNITY COLLEGE, Appellant.

*Opinion filed December 17, 2020.*

JUSTICE THEIS delivered the judgment of the court, with opinion.

Justices Garman, Neville, Michael J. Burke, and Carter concurred in the judgment and opinion.

Chief Justice Anne M. Burke dissented, with opinion.

Justice Overstreet took no part in the decision.

## OPINION

¶ 1        At issue in this appeal is whether section 3B-5 of the Public Community College Act (Act) (110 ILCS 805/3B-5 (West 2016)) permits the board of trustees for a

community college to lay off tenured faculty members and then, within the statutory recall period, hire adjunct instructors to teach courses that the laid-off faculty members are competent to teach. We conclude that it does not; therefore, we affirm the appellate court's judgment.

¶ 2                                           BACKGROUND

¶ 3        In early March 2016, the Board of Trustees of John A. Logan Community College (Board and College, respectively) voted to reduce the number of full-time faculty members that the College would employ during the 2016-17 school year. Accordingly, 27 tenured faculty members,[1] including the 7 plaintiffs, received layoff notices as set forth in the Act. See *id.* In late May 2016, the Board and a labor organization that represented plaintiffs entered into a settlement agreement regarding various matters related to the reduction in the workforce.

¶ 4        In September 2017, plaintiffs petitioned the Williamson County circuit court for a writ of *mandamus*, arguing that the Board violated section 3B-5 of the Act, which establishes procedures following a reduction in the number of faculty members. The last sentence in that section provides:

> "For the period of 24 months from the beginning of the school year for which the faculty member was dismissed, any faculty member shall have the preferred right to reappointment to a position entailing services he is competent to render prior to the appointment of any new faculty member; provided that no non-tenure faculty member or other employee with less seniority shall be employed to render a service which a tenured faculty member is competent to render." *Id.*

¶ 5        Plaintiffs' claim centered on the second clause of the sentence. They alleged that, during the 2016-17 school year, the Board employed adjunct instructors to teach courses that plaintiffs had previously taught. Plaintiffs further alleged that enough work existed to employ them full-time for that school year, had the Board

---

[1] Under the Act, any faculty member who has been employed in any district for three consecutive school years shall receive tenure "unless dismissed as hereinafter provided." 110 ILCS 805/3B-2 (West 2016). A tenured faculty member "shall have a vested contract right in continued employment as a faculty member" subject to termination only for "[j]ust cause" or upon a reduction in the number of faculty members employed or a discontinuance of a teaching service or program. *Id.*

not hired adjunct instructors to teach their courses. By September 2017, six of the plaintiffs had been recalled to full-time teaching positions. Thus, plaintiffs' petition sought back pay, benefits, and an order recalling the remaining plaintiff to a full-time faculty member position. Plaintiffs also asked the court to permanently enjoin the Board from laying off tenured faculty members and, during the two-year recall period, employing adjunct instructors or other "non-teaching staff" to render services that laid-off faculty members are competent to render.

¶ 6        In November 2017, the Board moved to dismiss the petition under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2016)). First, the Board argued that plaintiffs' claim was barred by the settlement agreement executed in May 2016. Second, based on *Biggiam v. Board of Trustees of Community College District No. 516*, 154 Ill. App. 3d 627 (1987), the Board claimed that it was entitled to lay off plaintiffs and employ part-time adjunct faculty to teach their courses. Plaintiffs opposed the Board's dismissal motion, arguing that the settlement agreement did not preclude their claim and that *Biggiam* was distinguishable.

¶ 7        The trial court granted the Board's motion to dismiss. The court determined that the settlement agreement did not bar plaintiffs' claim; however, it found itself "bound to follow *Biggiam*." Plaintiffs appealed.

¶ 8        The appellate court noted that, under section 3B-5, " 'no non-tenure faculty member or other employee with less seniority shall be employed to render a service which a tenured faculty member is competent to render.' " 2019 IL App (5th) 180284, ¶ 11 (quoting 110 ILCS 805/3B-5 (West 2016)). The court explained that the rights conferred by section 3B-5 are commonly referred to as "bumping rights." *Id.* ¶ 1.

¶ 9        As a general matter, when there is a reduction in force in a workplace that operates under a seniority system, workers with greater seniority whose jobs are abolished have the right to displace (or bump) workers with less seniority from a position for which both are qualified. See *Hancon v. Board of Education of Barrington Community Unit School District No. 220*, 130 Ill. App. 3d 224, 228 (1985). This process is known as "bumping." See *Peters v. Board of Education of Rantoul Township High School District No. 193*, 97 Ill. 2d 166, 171 (1983).

¶ 10        In this case, the appellate court found that the relevant questions were whether adjunct instructors were " 'other employee[s] with less seniority' " within the meaning of the Act and whether plaintiffs had the right to displace, or bump, adjunct instructors from individual courses, rather than from teaching positions. 2019 IL App (5th) 180284, ¶ 11. The court noted that, under the Act, "faculty member" means " 'a full time employee' " of the district " 'regularly engaged in teaching or academic support services, but excluding supervisors, administrators and clerical employees.' " *Id.* ¶ 12 (quoting 110 ILCS 805/3B-1 (West 2016)). The words "employee" and "seniority" were not statutorily defined. Therefore, the appellate court afforded them their plain and ordinary meanings.

¶ 11        The appellate court noted that the word "employee" means one who is " 'employed by another.' " *Id.* (quoting Webster's Ninth New Collegiate Dictionary 408 (1983)). Adjunct instructors are employed by the Board to teach courses. Accordingly, the court found that they fell within this definition. *Id.* The court noted that the plain and ordinary meaning of the term "seniority" is " 'a privileged status attained by length of continuous service.' " *Id.* (quoting Webster's Ninth New Collegiate Dictionary 1071 (1983)). Adjunct, or part-time, instructors are hired on a term basis, and they do not accrue seniority. *Id.* The court observed that plaintiffs, tenured faculty members with a vested contract right in continued employment, had more seniority than employees who had no seniority. *Id.* Accordingly, the appellate court ruled that adjunct instructors were other " 'employee[s] with less seniority' " within the meaning of the provision. *Id.*

¶ 12        The appellate court rejected the Board's argument that, because the first clause of the last sentence in section 3B-5 applied to faculty members, the second clause, which is at issue here, must also apply to faculty members. *Id.* ¶¶ 13-14. The court reasoned that "the legislature deliberately chose to use broader language throughout the second clause," which "demonstrates that it intended that clause to have broader application than the first clause." *Id.* ¶ 14. Further, the appellate court determined that the legislature's intent in enacting the section, as shown by the legislative history, was to protect teachers "from the arbitrary and sometimes capricious actions of some *** community colleges." *Id.* ¶ 15 (quoting 81st Ill. Gen. Assem., House Proceedings, June 18, 1979, at 99 (statements of Representative Getty)).

¶ 13    The court observed that "[t]he result urged by the defendant in this case would give tenured faculty members priority over less senior tenured faculty members and faculty members who do not yet have tenure, while allowing colleges to replace them with employees with the least seniority—adjunct instructors." *Id.* ¶ 35. It found that such a result would be absurd. *Id.* The appellate court recognized that the court in *Biggiam* had reached a different conclusion; however, it determined that the case was both factually distinguishable and wrongly decided. *Id.* ¶¶ 16, 25, 29.

¶ 14    The dissenting justice found it "clear from the plain language of the statute" that the provision "was meant to apply to those faculty members who are able to accrue any seniority and does not apply to the adjunct instructors." *Id.* ¶ 43 (Welch, J., dissenting). The dissent also disagreed with the majority's conclusion that construing the statute in the way that the defendant proposed would evade the purposes of tenure. *Id.* ¶ 44.

¶ 15    We granted the Board's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2019).

¶ 16                                   ANALYSIS

¶ 17    The question before us is whether section 3B-5 of the Act prohibits the Board from laying off tenured faculty members and then hiring adjunct instructors to teach courses that the tenured faculty formerly taught. Statutory construction presents a question of law that this court reviews *de novo*. *Van Dyke v. White*, 2019 IL 121452, ¶ 45. When presented with an issue of statutory construction, our primary objective is to ascertain and give effect to the legislature's intent. *Oswald v. Hamer*, 2018 IL 122203, ¶ 10. "All other rules of statutory construction are subordinate to this cardinal principle." *Id.* The most reliable indicator of legislative intent is the language of the statute itself, which we give its plain and ordinary meaning. *Van Dyke*, 2019 IL 121452, ¶ 46. If the meaning of an enactment is unclear from the statutory language, this court may also consider the purpose behind the law and the evils that the law was designed to remedy. *Palm v. Holocker*, 2018 IL 123152, ¶ 21. As we observed under an analogous statute, the legislature's purpose "in creating teacher tenure was to assure continuous service on the part of teachers of ability and experience by providing those teachers with some degree of job

- 5 -

security." *Birk v. Board of Education of Flora Community Unit School District No. 35*, 104 Ill. 2d 252, 257 (1984).

¶ 18     We analyze the statutory terms in turn. Under section 3B-5, "no non-tenure faculty member or other employee with less seniority shall be employed to render a service which a tenured faculty member is competent to render." 110 ILCS 805/3B-5 (West 2016). A "non-tenure faculty member" is a full-time teacher who has worked for a district for fewer than three consecutive school years. See *id.* §§ 3B-1, 3B-2. Adjunct or part-time instructors do not fit within that category; therefore, we assess whether adjunct instructors are "other employee[s] with less seniority." None of these words were defined. "When the statute contains undefined terms, it is entirely appropriate to employ a dictionary to ascertain the plain and ordinary meaning of those terms." *People v. McChriston*, 2014 IL 115310, ¶ 15; see *People ex rel. Madigan v. Wildermuth*, 2017 IL 120763, ¶ 17.

¶ 19     The word employee is defined as "one employed by another *** usu. for wages." Webster's Third New International Dictionary 743 (1993); accord *Johnson v. Figgie International, Inc.*, 151 Ill. App. 3d 496, 508-09 (1986) ("An 'employee,' as defined in Black's Law Dictionary is: 'One who works for an employer; a person working for salary or wages ***.' " (quoting Black's Law Dictionary 617 (4th ed. 1968)). The word seniority is defined as "a status attained by length of continuous service (as in a company, institution, or organization ***)." Webster's Third New International Dictionary 2066 (1993); see *Sinnock v. Board of Fire & Police Commissioners*, 131 Ill. App. 3d 854, 856-57 (1985).

¶ 20     In this case, the Board employs adjunct instructors for wages on a semester-by-semester basis, and they do not accrue seniority. By contrast, plaintiffs are tenured faculty members—in other words, full-time teachers who have been employed by a district for three or more consecutive school years—and they accrue seniority. See 110 ILCS 805/3B-1, 3B-2 (West 2016). As the appellate court correctly observed, employees with seniority "clearly have more seniority than employees with *no* seniority." (Emphasis in original.) 2019 IL App (5th) 180284, ¶ 12. Based on the plain meanings of the above words, we conclude that adjunct instructors are other employees with less seniority than plaintiffs.

¶ 21     We next address meaning of the phrase "shall be employed to render a service." Again, under section 3B-5, no other employee with less seniority "shall be

employed to render a service which a tenured faculty member is competent to render." 110 ILCS 805/3B-5 (West 2016). Among the definitions of the word "employ" is "to provide with a job that pays wages or a salary." Webster's Third New International Dictionary 743 (1993). The word "render" is, in part, defined as "to give in reward or retribution." *Id.* at 1922. Among the definitions for the word "service" is "the performance of work commanded or paid for by another." *Id.* at 2075.

¶ 22    Here, the Board provided adjunct instructors with wages in return for their providing students with instruction on various subject matters. Putting the definitions together, we conclude that the phrase "shall be employed to render a service" in this statute includes being hired to teach a course. See generally *Piatak v. Black Hawk College District No. 503*, 269 Ill. App. 3d 1032, 1035 (1995) (concluding that the phrase " 'shall be employed' " in section 3B-5 means " 'shall be hired' " and finding that conclusion to be "the only plausible reading of this sentence in view of the manner in which it is constructed").

¶ 23    The Board insists that section 3B-5 allows it to employ adjunct instructors to teach courses that laid-off faculty members are competent to teach. It argues that the two clauses of the sentence in section 3B-5 must be construed together and "must be given the same contextual meaning." The last sentence of section 3B-5 reads:

> "For the period of 24 months from the beginning of the school year for which the faculty member was dismissed, any faculty member shall have the preferred right to reappointment to a position entailing services he is competent to render prior to the appointment of any new faculty member; provided that no non-tenure faculty member or other employee with less seniority shall be employed to render a service which a tenured faculty member is competent to render." 110 ILCS 805/3B-5 (West 2016).

¶ 24    The first clause gives a faculty member the right to be reappointed to a "position entailing services" before any new faculty member is appointed. "The term 'position' refers to the totality of a job and not to part of it." *Hayes v. Board of Education of Auburn Community Unit School District*, 103 Ill. App. 3d 498, 501 (1981). Here, that would mean a full-time teaching position. From this, the Board argues that, because the first clause gives a faculty member the right to

reappointment to a full-time teaching position, the second clause must also apply to the right to be employed to a full-time position.

¶ 25    Yet that is not how the statute was written. The first clause solely pertains to faculty members. It gives a current faculty member the right to be reappointed to a position entailing services she is competent to render before a new faculty member can be appointed. See 110 ILCS 805/3B-5 (West 2016). The second clause, as the appellate court correctly noted, is more broadly written. 2019 IL App (5th) 180284, ¶ 14. The second clause prevents a board from employing a "non-tenure faculty member or other employee with less seniority" from rendering a service that a tenured faculty member is competent to render. 110 ILCS 805/3B-5 (West 2016). By its express terms, the second clause does not apply only to a faculty member and it does not apply to a position entailing services. See *People v. Clark*, 2019 IL 122891, ¶ 23 ("When the legislature includes particular language in one section of a statute but omits it in another section of the same statute, courts presume that the legislature acted intentionally and purposely in the inclusion or exclusion [citations] and that the legislature intended different meanings and results [citations]." (Internal quotation marks omitted.)).

¶ 26    The Board relatedly contends that the relationship between the two clauses in section 3B-5 is that of a main and a dependent clause, such that the "second clause merely adds an additional proviso—that a faculty member or other employee with less seniority cannot be reassigned to the dismissed faculty member's position." We disagree. Rather, we conclude that these are "two independent clauses separated by a semicolon." See *id.* The first clause gives an existing faculty member rights as against a new faculty member, and the second clause gives a tenured faculty member rights as against a nontenured faculty member and an "other employee with less seniority."

¶ 27    As it did in the trial and appellate courts, the Board again relies heavily on *Biggiam* to support its proffered interpretation of the statute.[2] There, the appellate

---

[2]The Board notes that, although the General Assembly amended section 3B-5 a few years after the appellate court filed its decision in *Biggiam*, it did not change the part of section 3B-5 addressed in *Biggiam*. Thus, the Board contends that the appellate court in this case should have applied the "judicial construction doctrine" to *Biggiam*. In general, when the legislature chooses not to amend a statute after a judicial construction, we presume that it has acquiesced in the court's statement of the legislative intent. *Blount v. Stroud*, 232 Ill. 2d 302, 324 (2009). Yet we have also observed that

court determined that the term "other employee with less seniority" in the second clause of section 3B-5 must be understood to mean " 'other *tenured* employee with less seniority.' " (Emphasis in original.) *Biggiam*, 154 Ill. App. 3d at 643. Based on that understanding, *Biggiam* ruled that the phrase "other employee with less seniority" did not include part-time instructors. *Id.*

¶ 28    Our analysis above, however, demonstrates that adjunct instructors—who work for a community college and do not accrue seniority—have less seniority than tenured faculty members. The plain language reveals that adjunct instructors constitute other employees with less seniority within the meaning of this provision. We see no basis for reading the word "tenured" into the clause when the legislature did not include it. See *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 21 ("Courts are not at liberty to depart from the plain language and meaning of a statute by reading into it exceptions, limitations or conditions that the legislature did not express.").

¶ 29    The appellate court in *Biggiam* also considered whether the rights granted under section 3B-5 "extend to 'any course that the protected faculty member is competent to teach ***,' or are they limited to a 'position' entailing services the protected faculty member is 'competent to render.' " *Biggiam*, 154 Ill. App. 3d at 643. Relying, in part, on terms from the parties' collective bargaining agreement, the court determined that section 3B-5 authorized tenured faculty to displace less-senior employees from positions but not from individual courses. *Id.* at 647. However, as we noted above, the second clause in section 3B-5 does not mention "a position." It states that an employee with less seniority shall not be hired "to *render a service* which a tenured faculty member is competent to render." (Emphasis added.) 110 ILCS 805/3B-5 (West 2016). Again, we see no basis for importing the word "position" into the second clause where the legislature did not use it. See *Illinois State Treasurer*, 2015 IL 117418, ¶ 28 ("[N]o rule of construction authorizes us to *** rewrite a statute to add provisions or limitations the legislature did not include [citation]."). For the above reasons, we conclude that *Biggiam* was wrongly decided and therefore overrule it.

---

this presumption "is merely a jurisprudential principle; it is not a rule of law." *Id.* And "where the meaning of the statute is unambiguous, we will give little weight to the fact that the legislature did not amend the statute after appellate opinions interpreting the same." *Id.* at 325.

¶ 30 Returning to this case, the Board did not challenge plaintiffs' competence to render the services in question. Plaintiffs were discharged because the Board decided to reduce the number of faculty members that the College employed, not because the Board disputed their competence to teach the courses. Thus, we conclude that the Board employed adjunct instructors—other employees with less seniority than plaintiffs—to render a service, namely, to teach a course or courses, that plaintiffs were competent to render, in violation of section 3B-5 of the Act. Our ruling today is both compelled by the language of the statute and consistent with the legislature's goal in creating tenure, which, as we noted above, was to ensure a degree of job security for teachers with experience and ability. See *supra* ¶ 17. We trust that this goal will inform community college board employment decisions as well.

¶ 31 The appellate court correctly reversed the trial court's dismissal of plaintiffs' petition, and the action must be remanded for further proceedings. Accordingly, we affirm the judgment of the appellate court and remand the case for further proceedings.

¶ 32 CONCLUSION

¶ 33 For these reasons, we hold that adjunct instructors are "other employees with less seniority" within the meaning of this clause in section 3B-5 of the Act. We further hold that the rights conferred by the last sentence of section 3B-5 apply to individual courses, rather than to positions as faculty members. Therefore, the Board violated this provision by employing adjunct instructors to teach courses that tenured faculty members were competent to teach.

¶ 34 Appellate court judgment affirmed.

¶ 35 Circuit court judgment reversed.

¶ 36 Cause remanded.

¶ 37      CHIEF JUSTICE ANNE M. BURKE, dissenting:

¶ 38      Plaintiffs are tenured faculty members who were laid off from their full-time teaching positions by defendant, John A. Logan Community College. Following the layoffs, plaintiffs filed a petition for writ of *mandamus* in which they alleged that defendant had hired part-time, adjunct instructors to teach "many of the courses" they had previously taught. In doing so, according to plaintiffs, defendant violated section 3B-5 of the Public Community College Act (110 ILCS 805/3B-5 (West 2016)). Section 3B-5 provides, in full:

> "§ 3B-5. Reduction in Number of Faculty Members. If a dismissal of a faculty member for the ensuing school year results from the decision by the Board to decrease the number of faculty members employed by the Board or to discontinue some particular type of teaching service or program, notice shall be given the affected faculty member not later than 60 days before the end of the preceding school year, together with a statement of honorable dismissal and the reason therefor; provided that the employment of no tenured faculty member may be terminated under the provisions of this Section while any probationary faculty member, or any other employee with less seniority, is retained to render a service which the tenured employee is competent to render. In the event a tenured faculty member is not given notice within the time herein provided, he shall be deemed reemployed for the ensuing school year. Each board, unless otherwise provided in a collective bargaining agreement, shall each year establish a list, categorized by positions, showing the seniority of each faculty member for each position entailing services such faculty member is competent to render. Copies of the list shall be distributed to the exclusive employee representative on or before February 1 of each year. For the period of 24 months from the beginning of the school year for which the faculty member was dismissed, any faculty member shall have the preferred right to reappointment to a position entailing services he is competent to render prior to the appointment of any new faculty member; provided that no non-tenure faculty member or other employee with less seniority shall be employed to render a service which a tenured faculty member is competent to render." *Id.*

¶ 39      Plaintiffs' petition relied primarily on the final clause of section 3B-5. According to plaintiffs, defendant violated this clause because, within 24 months

of the layoffs, defendant hired part-time, adjunct instructors who were "other employee[s] with less seniority," who rendered "service[s]" the tenured faculty members were competent to render.

¶ 40　　　　Defendant filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2016)) and, in support, pointed to *Biggiam v. Board of Trustees of Community College District No. 516*, 154 Ill. App. 3d 627, 643 (1987). *Biggiam* held that part-time, adjunct instructors are not " 'other employee[s] with less seniority' " within the meaning of section 3B-5 (*id.*) and, further, that the 24-month preferred right to reappointment created by section 3B-5 applies only to teaching positions and not to individual courses (*id.* at 647). Accordingly, under *Biggiam*, adjunct instructors may be hired to teach a former course or courses of tenured faculty on an *ad hoc* basis during the 24-month recall period. Relying on *Biggiam*, the circuit court granted defendant's motion to dismiss. On appeal, with one justice dissenting, the appellate court reversed. 2019 IL App (5th) 180284.

¶ 41　　　　The majority affirms the judgment of the appellate court. Noting that section 3B-5 does not define the terms "employee" or "seniority," the majority turns to dictionary definitions. The majority concludes that part-time, adjunct instructors fall within the dictionary definition of "employee." *Supra* ¶ 21. Further, a dictionary definition of "seniority" is " 'a status attained by length of continuous service,' " and because adjunct instructors are hired on a semester-by-semester basis, they cannot attain seniority. *Supra* ¶¶ 20-21 (quoting Webster's Third New International Dictionary 2066 (1993)). Therefore, according to the majority, because adjunct instructors can never attain seniority they must, by definition, have less seniority than tenured faculty members. *Supra* ¶ 21. Thus, the majority holds that adjunct instructors fall within the plain meaning of the final clause of section 3B-5. *Supra* ¶ 21. In a similar way, the majority puts dictionary "definitions together" and holds that the phrase " 'shall be employed to render a service' " includes being hired to teach an individual course. *Supra* ¶¶ 22-23. Accordingly, the majority overrules *Biggiam*. *Supra* ¶ 30.

¶ 42　　　　In reaching these conclusions, the majority rejects defendant's contention that the final clause of section 3B-5 must be read in the context of the statute as a whole. Rather, the majority isolates the clause from the remainder of the statute, refers to

a dictionary, and declares the meaning of the language in the clause "plain." This is a stark deviation from proper statutory analysis.

¶ 43    The plain meaning rule requires that statutory terms always be considered in context. As the United States Supreme Court has observed, it is a "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation but must be drawn from the context in which it is used. [Citations.]" *Deal v. United States*, 508 U.S. 129, 132 (1993). Further, determining whether a statutory "term is unambiguous *** does not turn solely on dictionary definitions of its component words." *Yates v. United States*, 574 U.S. ___, ___, 135 S. Ct. 1074, 1081 (2015). Instead, "[t]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself[ ] [but also by] the specific context in which that language is used[ ] and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

¶ 44    When the phrase "other employee with less seniority" is read in the context of section 3B-5 as a whole, as it must be, it is clear that it cannot be referring to part-time, adjunct instructors. This is because the use of the term "less seniority" necessarily implies that the "employee" is in a job where seniority can, in fact, accrue. Otherwise, the legislature would simply have used the term "other employee." Therefore, the phrase "other employee with less seniority" must refer to an employee who holds a "position," because it is only in a full-time position that a faculty member can acquire seniority. And, in fact, the preceding clause of the same sentence uses the term "position" to refer to a faculty member who has an appointment.

¶ 45    This understanding of the context and meaning of the final sentence of section 3B-5 was fully explained by our appellate court in *Piatak v. Black Hawk College District No*. 503, 269 Ill. App. 3d 1032, 1035-36 (1995). There, the court stated:

        "The first clause of the sentence is a main clause, which means that it can stand alone as a complete sentence. The second clause, which follows the semicolon, is a dependent clause. The relation between a main clause and a dependent clause is determined from the particular subordinate conjunction which joins them. (See Edward A. Dornan & Charles W. Dawe, The Brief English Handbook 22-23 (4th ed. 1994).) In this case the subordinate

conjunction is 'provided that,' which indicates that the dependent clause is placing a condition upon the operation of the main clause. See Margaret Shertzer, The Elements of Grammar 46 (1986).

The main clause in the sentence in question provides that any dismissed faculty member, regardless of tenure, has a preferred right to reappointment before any new faculty members are appointed. This preferred right unquestionably relates to open positions because a community college would not have occasion to appoint a new faculty member unless a position has become available. Therefore, it is clear that the main clause confers upon dismissed faculty members the right to reappointment to open positions which become available following their dismissal.

The dependent clause places a condition upon this right. The condition is that tenured faculty members are to be preferred over nontenured faculty members and other employees with less seniority. *Since the main clause applies only to open positions becoming available following a faculty member's dismissal, the condition stated in the dependent clause relates only to open positions as well*. Accordingly, section 3B-5 must be construed to mean that a dismissed faculty member has a right to reappointment to an open position prior to the appointment of a new faculty member, and that a tenured faculty member will be appointed to that position before a nontenured faculty member or employee with less seniority is appointed." (Emphasis added.) *Id.*

¶ 46　　In short, when properly considered in its statutory context, the "other employee" referred to in the final clause of section 3B-5 must mean one who holds a "position." Part-time, adjunct instructors do not hold "positions." Thus, the most natural reading of the final clause is that it is not referring to adjunct instructors. Rather, the statute is saying that, for filling full-time positions at the school, tenured teachers are given priority over nontenured teachers, and as between tenured teachers, priority is given to those with the longer length of continuing service. This was the principal holding of the *Biggiam* court. *Biggiam*, 154 Ill. App. 3d at 643.

¶ 47　　The majority commits the same error of disregarding statutory context when considering the meaning of the word "service." Again, the first clause of the final sentence of section 3B-5 gives a dismissed faculty member a preferred right to reappointment to a position prior to the appointment of any new faculty member.

The second clause merely adds a proviso—that a faculty member or other employee with less seniority cannot be reassigned to the dismissed faculty member's position. The first clause applies to a "position entailing services." The word "service" in the second clause must be construed together with the first and must be given the same contextual meaning, that is, a "position" entailing services. See, *e.g.*, *In re Shelby R.*, 2013 IL 114994, ¶ 39 (" '[w]here a word is used in different sections of the same statute, the presumption is that the word is used with the same meaning throughout the statute, unless a contrary legislative intent is clearly expressed' " (quoting *People v. Maggette*, 195 Ill. 2d 336, 349 (2001))). Instead of doing this, however, the majority improperly takes the language in the second clause out of context and gives it a meaning that is at odds with the statute as a whole. Indeed, it is only by divorcing the final clause from its statutory context that the majority can reach the result it does.

¶ 48     Finally, in rejecting *Biggiam*—a precedent that has been in existence for three decades and been undisturbed by the legislature—the majority gives no consideration to the consequences of its decision. Consider the following: A community college facing a budget crisis must lay off a full-time, tenured faculty member and eliminate four of the five classes she teaches. The college would like to hire a part-time, adjunct instructor to teach the one remaining course, because that is all the school can afford. Under the majority's reading of the statute, the school cannot do this. Instead, before an adjunct could be hired, the course must be offered to the faculty member who was laid off. The faculty member must be offered a "position," which means a full-time teaching schedule and benefits. In other words, the majority's reading of the statute defeats the purpose of the layoff, making it effectively impossible for the college to manage its budget. I disagree with this result and, therefore, respectfully dissent.

¶ 49     JUSTICE OVERSTREET took no part in the consideration or decision of this case.