NOTICE
Decision filed 09/12/19. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2019 IL App (5th) 180284

NO. 5-18-0284

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| CHERYL BARRALL, JANE BEYLER, NIKKI BORRENPOHL, DAVID COCHRAN, DAVID EVANS, MOLLY GROOM ALTER, and JENNIFER WATKINS, | ) ) ) | Appeal from the Circuit Court of Williamson County. |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 17-MR-275 |
| | ) | |
| THE BOARD OF TRUSTEES OF JOHN A. LOGAN COMMUNITY COLLEGE, | ) ) | Honorable |
| | ) | Brad K. Bleyer, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the judgment of the court, with opinion.
Presiding Justice Overstreet concurred in the judgment and opinion.
Justice Welch dissented, with opinion.

**OPINION**

¶ 1    The plaintiffs are tenured faculty members who were laid off from their teaching positions by the defendant, the Board of Trustees of John A. Logan Community College. Under section 3B-5 of the Public Community College Act (Act), tenured faculty members such as the plaintiffs have a "preferred right to reappointment" for a period of 24 months after the beginning of the school year in which they are laid off. 110 ILCS 805/3B-5 (West 2016). Under the same provision, "no non-tenure faculty member or other employee with less seniority" may be hired during that period to provide a service that a tenured faculty member with this right is "competent to render." *Id.* The rights conferred by this statute are commonly referred to as "bumping rights." The primary issue in this appeal is the meaning of the phrase "other employees with less seniority." We also consider

whether, under the circumstances of this case, bumping rights apply only to teaching positions or to individual courses as well.

¶ 2                                I. BACKGROUND

¶ 3     The plaintiffs filed a petition for a writ of *mandamus*, alleging that the defendant violated the statute by hiring adjunct instructors to teach many of the courses previously taught by the plaintiffs. The defendant filed a motion to dismiss, arguing that under the Second District's holding in *Biggiam v. Board of Trustees of Community College District No. 516*, 154 Ill. App. 3d 627, 634 (1987), adjuncts are not "employee[s] with less seniority" within the meaning of the statute. The trial court granted the motion. The plaintiffs appeal, arguing that (1) *Biggiam* was wrongly decided, (2) under the plain language of the statute, adjunct instructors are "employees with less seniority" than the plaintiffs, thus giving the plaintiffs a right to be recalled before adjuncts are hired to teach their courses, and (3) bumping rights apply to individual courses, which are "services" the plaintiffs are "competent to render." We reverse.

¶ 4     The plaintiffs filed their complaint in September 2017. They alleged that the defendant voted in March 2016 to reduce the number of full-time faculty members employed by John A. Logan College beginning in August 2016. As a result of this vote, 27 tenured faculty members were laid off, including the plaintiffs. During the 2016-17 school year, the defendant hired adjunct instructors to teach "many of the courses" previously taught by the 27 laid-off tenured faculty members. Six of the seven plaintiffs were recalled to teach during the 2017-18 school year, but one plaintiff, Dr. Jane Beyler, had not been recalled when the plaintiffs filed their complaint. The plaintiffs alleged that during the 2016-17 school year, there was enough work available to employ all seven plaintiffs full-time had the defendant not employed adjunct instructors to teach their

2

classes instead. They further alleged that there was sufficient work available to employ Dr. Beyler full-time during the 2017-18 school year.

¶ 5    The plaintiffs requested that the court enter a writ of *mandamus* directing the defendant to reinstate Dr. Beyler to a full-time teaching position. They also asked the court to award them damages and to order the defendant to make each plaintiff whole with respect to employment benefits and credited service in their retirement system. Finally, the plaintiffs sought a permanent injunction enjoining the defendant from laying off tenured faculty and employing adjunct instructors to teach their classes during the two-year recall period.

¶ 6    The defendant filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2016)). The defendant asserted two grounds for dismissal. First, it argued that the plaintiffs' claims were released pursuant to a "Memorandum of Understanding and Settlement Agreement" entered into by the defendant and the faculty association representing the plaintiffs. Second, the defendant argued that under the *Biggiam* court's interpretation, the relevant statutory provision did not prohibit it from laying off tenured faculty members like the plaintiffs and hiring adjunct instructors to teach their courses.

¶ 7    The trial court found that the plaintiffs' claims were not barred by the parties' "Memorandum of Understanding and Settlement Agreement." However, the court concluded that it was "bound to follow *Biggiam v. Board of Trustees*." As stated previously, that case held that adjunct instructors are not "other employee[s] with less seniority" and that they may therefore be hired to teach the courses of tenured faculty members during the statutory recall period. *Biggiam*, 154 Ill. App. 3d at 643. The *Biggiam* court also held that bumping rights apply only to teaching positions, not to individual courses. See *id.* at 647. Because the trial court found that it was obliged

3

to follow these holdings, it granted the motion to dismiss and entered judgment in favor of the defendant. This appeal followed.

¶ 8                                    II. ANALYSIS

¶ 9      This appeal comes to us after a ruling on a section 2-619 motion to dismiss. Thus, we assume that all of the well-pled allegations in the complaint are true. *Ray v. Beussink & Hickam, P.C.*, 2018 IL App (5th) 170274, ¶ 12. We conduct a *de novo* review of the court's ruling. *Glasgow v. Associated Banc-Corp.*, 2012 IL App (2d) 111303, ¶ 11. Resolution of the parties' arguments requires us to construe section 3B-5 of the Act (110 ILCS 805/3B-5 (West 2016)). Statutory construction is a question of law, which is likewise subject to *de novo* review. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 439 (2010).

¶ 10     Our primary goal in statutory construction is to determine and effectuate the intent of the legislature. *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 11. The best indication of this intent is the express language of the statute itself. *Id.* Where a statute is clear and unambiguous, we must apply it as written without resorting to extrinsic aids of statutory construction. *Id.* Only if a statute is ambiguous may we look beyond its express language and rely on extrinsic aids such as legislative history or rules of statutory construction. *Id.* ¶ 13. In construing a statute, we must consider the purposes of the statute and the problems it was intended to remedy. *People v. Davis*, 296 Ill. App. 3d 923, 926 (1998). We may also find guidance from judicial interpretations of statutes that serve similar purposes, such as the tenure provisions in the School Code. See *Board of Trustees of Community College District No. 508 v. Taylor*, 114 Ill. App. 3d 318, 323 (1983).

¶ 11     The relevant statute governs layoffs resulting from a community college board's decision to reduce the number of faculty members it employs. The statute also governs the recall of laid-off faculty members. The recall provision is at issue in this case. It provides:

4

"For the period of 24 months from the beginning of the school year for which the faculty member was dismissed, any faculty member shall have the preferred right to reappointment to a position entailing services he is competent to render prior to the appointment of any new faculty member; provided that no non-tenure faculty member or other employee with less seniority shall be employed to render a service which a tenured faculty member is competent to render." 110 ILCS 805/3B-5 (West 2016).

The questions in this case are whether the adjunct instructors hired to teach the plaintiffs' courses are "other employee[s] with less seniority" and, if so, whether the plaintiffs have bumping rights with respect to individual courses.

¶ 12    We first consider whether adjunct instructors are "other employee[s] with less seniority." The Act defines "faculty member" as "a full time employee" of a community college or community college district who is "regularly engaged in teaching or academic support services, but excluding supervisors, administrators and clerical employees." *Id.* § 3B-1. However, there are no statutory definitions for the terms "employee" and "seniority." See *id.* Terms that are not defined by statute must be given their plain and ordinary meaning. *Alvarez v. Pappas*, 229 Ill. 2d 217, 228 (2008). The plain and ordinary meaning of the word "employee" is a person who is "employed by another usually for wages or salary and in a position below the executive level." Webster's Ninth New Collegiate Dictionary 408 (1983). Adjunct instructors clearly fall within this definition. The plain and ordinary meaning of the term "seniority" is "a privileged status attained by length of continuous service." *Id.* at 1071. There is no dispute that adjunct instructors, who are hired on a year-to-year basis, do not attain any seniority. The plaintiffs clearly have more seniority than employees with *no* seniority. We therefore find that, giving this statutory language its plain and ordinary meaning, the adjunct instructors are "employee[s] with less seniority" than the plaintiffs.

5

¶ 13　The defendant argues, however, that the phrase "employee with less seniority" is ambiguous due to the structure of the sentence containing the recall provisions. The defendant's argument relies on the differences between the two clauses of the sentence. As noted previously, the first clause provides that a tenured faculty member has "the preferred right to reappointment to a position entailing services he is competent to render *prior to the appointment of any new faculty member*." (Emphasis added.) 110 ILCS 805/3B-5 (West 2016). The second clause states, "*provided that* no non-tenure faculty member or other employee with less seniority" may be hired to provide services the tenured faculty member is "competent to render." (Emphasis added.) *Id.* The defendant notes that a proviso is generally intended to qualify the language that comes before it. *Cardwell v. Rockford Memorial Hospital*, 136 Ill. 2d 271, 278 (1990). The defendant therefore argues that because the first clause unquestionably gives tenured faculty members a preferential right to recall only over faculty members, this same limitation must be read into the second clause due to its "proviso" language. We disagree.

¶ 14　We do not find the defendant's proffered interpretation to be a reasonable reading of the statute for two reasons. First, we believe the fact that the legislature deliberately chose to use broader language throughout the second clause demonstrates that it intended that clause to have broader application than the first clause. The reason for the difference in the language of two clauses is illustrated by the facts of this case. The defendant hires adjunct instructors, also known as "term faculty," on a year-to-year basis to teach individual classes as needed. By contrast, faculty members such as the plaintiffs are hired to fill teaching positions. This is not an uncommon practice. See, *e.g.*, *Biggiam*, 154 Ill. App. 3d at 645 (describing a similar hiring practice). While the first clause of the recall provision deals with the right to be recalled to a teaching position, the second clause applies more broadly to any service a tenured faculty member is competent to render,

6

such as teaching a specific course. Because adjuncts are only hired to teach individual courses as needed, there was no need for the legislature to include them in the clause governing reappointment to *positions*. If the legislature did not intend the second clause to apply to any and all employees with less seniority, it could have expressly limited its application to faculty members. It did not do so. Instead, it used the broad catch-all phrase "other employee[s] with less seniority."

¶ 15    Second, and more importantly, the legislative history of the statute shows that the interpretation urged by the defendant is at odds with the intent of the legislature. During the floor debates on the bill that added the tenure provisions to the Act, Representative Getty urged other legislators to support his bill because "the basic question here is a question of fundamental fairness." 81st Ill. Gen. Assem., House Proceedings, June 18, 1979, at 99 (statements of Representative Getty). He argued that the tenure provisions were necessary to protect community college teachers "from the arbitrary and sometimes capricious actions of some[,] and only some[,] community colleges." *Id.* at 100. He explained, "This is needed protection so that a man or woman, who's dedicated many years of teaching honorably, doesn't all of a sudden find himself with a $22,000 a year job being cut so that the community college can hire two for [$]11,250." *Id.* That is the essence of what the plaintiffs alleged occurred in this case.

¶ 16    We acknowledge that, as the defendant emphasizes, the Second District reached the opposite conclusion in its 1987 decision in *Biggiam*. We note that while this case involves a ruling on a motion to dismiss, *Biggiam* involved cross-appeals from a trial court's judgment after a hearing. In light of this procedural posture, the factual record in that case was more developed than the factual record in this case. As the plaintiffs point out, aspects of the case were factually distinguishable from the case before us. The *Biggiam* court addressed both of the questions we address today. The factual distinctions between *Biggiam* and this case are crucial with respect to

7

the court's determination that the plaintiffs there did not have bumping rights with respect to individual courses. However, those distinctions are immaterial with respect to the court's interpretation of the phrase "employee[s] with less seniority." With this in mind, we turn our attention to the Second District's decision.

¶ 17 In *Biggiam*, the defendant community college district reduced the number of full-time faculty members it employed. Its decision was based on low enrollment in specific programs, low enrollment overall, and the financial condition of the college at which the plaintiffs taught. *Biggiam*, 154 Ill. App. 3d at 630.

¶ 18 One of the plaintiffs in that case was Newlon, a theater teacher. *Id.* at 631. Although he primarily taught theater classes, he also occasionally taught an introductory speech class on an overload basis. *Id.* at 632. After Newlon was laid off due to the reduction in faculty, the college continued to offer numerous sections of the introductory speech class he previously taught, but only one theater class. *Id.* Plaintiffs Biggiam and Moreland taught full course-loads of welding classes prior to the layoffs. After the layoffs, only one welding class was offered. *Id.* at 633. Plaintiff Vargas was hired as a counselor, not a teacher. However, she occasionally taught psychology classes on an overload basis. *Id.* She had a doctor of education degree in counselor education but did not have advanced degrees in psychology or educational psychology. *Id.* at 634. After Vargas was laid off from her position as a counselor, the college offered several sections of the psychology courses she had previously taught. Some of those sections were taught by part-time instructors or tenured faculty members with less seniority than Vargas. *Id.* at 633-34.[1]

---

[1]We note that there were two additional plaintiffs involved. One of the plaintiffs did not have tenure. *Biggiam*, 154 Ill. App. 3d at 629. His claims related to rights he had under the parties' collective bargaining agreement. *Id.* at 636. The sixth plaintiff voluntarily dismissed her complaint prior to the trial court's hearing in the matter and was not involved in the appeal. *Id.* at 628.

¶ 19 The trial court ruled in favor of Newlon, Biggiam, and Moreland. *Id.* at 628. It found that under section 3B-5, Newlon had the right to bump any part-time, nontenured, or less senior tenured teachers from teaching the introductory speech class he previously taught. The trial court similarly found that Biggiam and Moreland had the right to bump part-time, nontenured, or less senior tenured teachers from teaching welding classes. *Id.* The court ruled against Vargas, however. *Id.* It concluded that she would have bumping rights if any counseling positions opened during the 24-month recall period mandated by section 3B-5, but she did not have bumping rights with respect to psychology classes because she was not qualified to teach psychology under the applicable provisions of the parties' collective bargaining agreement. *Id.* at 629. As noted previously, both the defendant and the plaintiffs appealed different aspects of the trial court's ruling. *Id.* at 628.

¶ 20 The Second District began its analysis by considering whether section 3B-5 gives tenured faculty members bumping rights "only with respect to other faculty members or whether such rights may be asserted over part-time instructors as well." *Id.* at 638. The court also considered whether the parties' collective bargaining agreement gave faculty members bumping rights over part-time instructors. *Id.* The plaintiff teachers argued that the phrase "employee with less seniority" must be read to include part-time instructors in light of the purpose behind the tenure provisions. They argued that tenure provisions are meant to "provide priority job protection to tenured teachers 'as against employees of lower priority status.' " *Id.* at 642.

¶ 21 In rejecting the teachers' argument about the purpose of tenure, the Second District noted that "it is proper to compare the statute in question with statutes concerning related subjects." *Id.* It therefore considered language from an Illinois Supreme Court case that discussed the purposes of the Teacher Tenure Law under the School Code. *Id.* (citing *Birk v. Board of Education of Flora Community Unit School District No. 35*, 104 Ill. 2d 252 (1984)). In relevant part, the Illinois

9

Supreme Court explained in *Birk* that "[t]he primary purpose of the tenure provisions of the School Code is to give tenured teachers priority over non-tenured teachers [citation], and, as between tenured teachers, to give priority to those with the longer length of continuing service." *Birk*, 104 Ill. 2d at 257. What the *Birk* court did *not* say appears to have been more significant to the *Biggiam* court than what it *did* say. Specifically, the *Birk* court did not explicitly state that tenure also serves the purpose of giving tenured teachers priority over substitute teachers or any other category of teachers who are not entitled to attain tenure or accrue any form of seniority. See *id.* As such, the *Biggiam* court found that the plaintiff teachers' argument in that case "ascribe[d] a far broader purpose" to the Act's similar tenure provisions than the legislature intended. *Biggiam*, 154 Ill. App. 3d at 642.

¶ 22    The *Biggiam* court also rejected the teachers' contention that the phrase "other employee[s] with less seniority" included part-time instructors. The court reasoned that because part-time instructors do not accumulate "seniority," as defined under the parties' collective bargaining agreement, they "cannot be considered to be 'any other employee with less seniority.' " *Id.* at 643. The court acknowledged that a word in a statute, such as "employee," should ordinarily be given its "plain, ordinary, and commonly accepted meaning." *Id.* However, the court found that it was nevertheless appropriate to interpret the phrase "other employee with less seniority" to mean " 'any other *tenured* employee with less seniority.' " (Emphasis in original.) *Id.* The court therefore held that the trial court erred in construing that phrase to include the part-time instructors. *Id.*

¶ 23    The court went on to consider whether section 3B-5 gives tenured faculty members bumping rights with respect to individual courses as well as to full-time teaching positions. In answering that question, the court noted that when a reduction in faculty takes place, the "positions" held by laid-off faculty members cease to exist. The court further observed that "part-

10

time instructors are hired on a course-by-course basis to teach given courses as needed." *Id.* at 645. The court explained that, as such, part-time instructors, unlike full-time faculty members, do not fill "positions." *Id.*

¶ 24     The court also looked at a line of cases arising under the Teacher Tenure Law in the School Code. Under those cases, courts consistently held that school boards are not required to " 'gerrymander' " courses taught by less senior teachers and combine them into a single position for a laid-off teacher to fill. *Id.* at 644 (citing *Peters v. Board of Education of Rantoul Township High School District No. 193*, 97 Ill. 2d 166 (1983), *Hancon v. Board of Education of Barrington Community Unit School District No. 220*, 130 Ill. App. 3d 224 (1985), *Catron v. Board of Education of Kansas Community Unit School District No. 3*, 126 Ill. App. 3d 693 (1984), and *Higgins v. Board of Education of Community Unit School District No. 303*, 101 Ill. App. 3d 1003 (1981)). We note that those cases are not precisely analogous to the situation at issue in *Biggiam*. They involved laid-off teachers who were qualified to teach some, but not all, of the courses taught by less senior teachers whose positions had not been eliminated. In those cases, the courts held that a more senior teacher has the right to bump a less senior teacher from a position only if the more senior teacher is qualified to teach all of the courses included in the position; the district is not required to cobble together a new teaching position by allowing the teacher to bump less senior teachers from individual courses. *Peters*, 97 Ill. 2d at 169, 172; *Hancon*, 130 Ill. App. 3d at 231; *Catron*, 126 Ill. App. 3d at 695-96; *Higgins*, 101 Ill. App. 3d at 1008. Nevertheless, the *Biggiam* court found these holdings applicable to the circumstances before it and held that section 3B-5 does not give tenured faculty members the right to bump less senior employees "from certain *courses* as opposed to the *positions* in the college curriculum which are held by them." (Emphases in original.) *Biggiam*, 154 Ill. App. 3d at 647.

11

¶ 25    We express no opinion as to the whether the *Biggiam* court correctly held that bumping rights do not apply to individual courses under the facts and circumstances of that case. We need not do so because the instant case is factually distinguishable from *Biggiam* in relevant respects. There, as we have discussed, not only were the plaintiffs' *positions* eliminated, nearly all of the *courses* they regularly taught were also eliminated. Two of the plaintiffs wanted bumping rights over part-time instructors teaching courses that they had previously taught on an occasional basis even though those courses were outside their areas of expertise and were not part of their positions. Here, by contrast, the plaintiffs have alleged that the defendant hired adjunct instructors to teach the very same courses they taught before their positions were eliminated.

¶ 26    In that regard, we find the circumstances of this case far more analogous to a different line of cases involving the tenure provisions of the School Code. Those cases hold that school districts may not rearrange teaching assignments in a manner that defeats the rights of tenured teachers even if they do so in good faith. See, *e.g.*, *Pennell v. Board of Education of Equality Community Unit School District No. 4*, 137 Ill. App. 3d 139, 143 (1985); *Hayes v. Board of Education of Auburn Community Unit School District*, 103 Ill. App. 3d 498, 502 (1981); *Hagopian v. Board of Education of Tampico Community Unit School District No. 4*, 56 Ill. App. 3d 940, 944 (1978). That might happen, for example, if the district assigns most of the teacher's classes to other teachers. See, *e.g.*, *Pennell*, 137 Ill. App. 3d at 144; *Hayes*, 103 Ill. App. 3d at 502. Here, similarly, the plaintiffs have alleged that the defendant effectively eliminated teaching positions to which they could have been reappointed by assigning their courses to adjunct instructors, over whom they should have preference under section 3B-5. We conclude that the plaintiffs have bumping rights with respect to individual courses.

12

¶ 27    We note that, although *Biggiam* is distinguishable from this case with respect to its determination that the plaintiffs' bumping rights did not apply to individual courses, the court's interpretation of the phrase "other employee with less seniority" would be applicable here should we choose to follow its holding on that issue. We emphasize, however, that we are not obliged to follow the decisions of other districts of the Illinois Appellate Court. *People v. York*, 2016 IL App (5th) 130579, ¶ 25.

¶ 28    The plaintiffs argue that we should not follow *Biggiam* for two reasons. First, they assert that the court's interpretation of the phrase "other employee[s] with less seniority" was *dicta*. This is so, they argue, because the court could have disposed of the matter before it without addressing that question. In particular, the plaintiffs emphasize that the *Biggiam* plaintiffs wanted bumping rights to courses they were not qualified to teach. Second, the plaintiffs argue that *Biggiam* was wrongly decided. We cannot agree with the plaintiffs' contention that the *Biggiam* court's interpretation of the phrase "other employee[s] with less seniority" was *dicta*. The court explicitly stated that it believed this issue to be "foremost in this appeal." *Biggiam*, 154 Ill. App. 3d at 638. However, we do agree with the plaintiffs that *Biggiam* was wrongly decided.

¶ 29    We reach this conclusion for two reasons. First, as we already discussed, we believe that an employee with *no* seniority is necessarily an employee with less seniority than a faculty member who has any seniority at all. Thus, by its express terms, the statute gives tenured faculty members preference over adjunct instructors who have no seniority. We disagree with the *Biggiam* court's conclusion to the contrary.

¶ 30    Second, we believe that the *Biggiam* court read the language it quoted from *Birk* out of context. The plaintiff in *Birk* was a tenured high school guidance counselor. *Birk*, 104 Ill. 2d at 254. The school where he worked employed two guidance counselors. The other counselor had

13

eight years less seniority than the plaintiff. *Id.* at 255. Both guidance counselors worked 10 months of the year. *Id.* The board of education notified the plaintiff that it would be reducing his contractual service to nine months in the following school year. However, the other guidance counselor was retained in a 10-month position even though she had less seniority than the plaintiff. *Id.* The plaintiff asked the board of education to reinstate him in the 10-month position in place of the less senior counselor, but the board refused to do so. *Id.* The plaintiff sued the board. The trial court dismissed his petition, and the plaintiff appealed. The appellate court reversed the trial court's ruling, and the board appealed to the supreme court. *Id.* at 254.

¶ 31    The Illinois Supreme Court noted that the only question before it was whether the bumping rights in the Teacher Tenure Law applied to the school district's decision to reduce the plaintiff's service from 10 months to 9 months. *Id.* at 255. In answering that question in the affirmative, the court explained that a tenured faculty member is "entitled to a reading of [the relevant statute] which is consistent with its prime purpose of protecting those who have qualified for its protections." *Id.* at 257. Significantly for our purposes, this holding gave the plaintiff the right to bump a tenured guidance counselor with less seniority from the extra month of service. Thus, the *Birk* court was not called upon to decide the rights of a tenured teacher over an employee who, like the adjunct instructors in this case, did not have the right to accrue seniority. The *Birk* court's silence on a question that was not before it does not support the *Biggiam* court's conclusion that tenure provisions are intended to serve the limited purpose of giving tenured teachers priority over other tenured teachers with less seniority and full-time teachers who have not yet attained tenure. Because we do not find the *Biggiam* court's reasoning persuasive, we choose not to follow its holding.

14

¶ 32    The defendant points out, however, that the legislature amended section 3B-5 subsequent to the Second District's decision in *Biggiam* without changing the relevant language. See Pub. Act 86-501, § 1 (eff. Jan. 1, 1990) (amending 110 ILCS 805/3B-5). The defendant argues that we must presume that the legislature was aware of the Second District's interpretation of the relevant statutory language when it did so. See *Perry v. Department of Financial & Professional Regulation*, 2018 IL 122349, ¶ 67. The defendant further argues that because the legislature did not change the relevant language, we must also presume that the court intended that language to have the meaning ascribed to it by the *Biggiam* court. See *Illinois Power Co. v. City of Jacksonville*, 18 Ill. 2d 618, 622 (1960); *People ex rel. Nelson v. Wiersema State Bank*, 361 Ill. 75, 78-79 (1935).

¶ 33    The defendant's argument correctly states one important rule of statutory construction, but we do not find the argument persuasive. It is worth emphasizing that the presumption relied upon by the defendant is a "*general rule*" of statutory construction, and it does not apply where a contrary legislative intent is clear. (Emphasis added.) *Nelson*, 361 Ill. at 78-79. In light of both the statutory language itself and our consideration of other rules of statutory construction, we find that a contrary legislative intent is abundantly clear.

¶ 34    Another basic principle of statutory construction is that courts should consider the purpose of the law and the problems it was intended to remedy. *Davis*, 296 Ill. App. 3d at 926. Both the Illinois Supreme Court and this court have had occasion to discuss the purpose behind the tenure provisions in the School Code. In *Birk*, the Illinois Supreme Court explained that "[t]he legislature's goal in creating teacher tenure was to assure continuous service on the part of teachers of ability and experience by providing those teachers with some degree of job security." *Birk*, 104 Ill. 2d at 257. This court observed that by providing teachers with job security, the tenure system provides "continuity and stability for students" and it enables school districts to "attract teachers

15

of high quality[ ] and retain experienced teachers." *Pennell*, 137 Ill. App. 3d at 147. The tenure provisions in the Act were enacted to serve these same purposes. *Piatak v. Black Hawk College District No. 503*, 269 Ill. App. 3d 1032, 1036 (1995). The interpretation urged by the defendant would undermine the job security that tenure is meant to provide by allowing community colleges to replace faculty members with lower-paid, less experienced adjuncts even when their courses are still being offered. As we discussed previously, the legislative history of the statute indicates that the legislature specifically intended to avoid this result. See 81st Ill. Gen. Assem., House Proceedings, June 18, 1979, at 100 (statements of Representative Getty). The defendant's interpretation is also at odds with the broader purposes of tenure—that is, enabling community colleges to attract and retain the most qualified, experienced teachers available.

¶ 35    Similarly, we should consider the consequences that might result from our interpretation of the statute. In doing so, we must presume that the legislature did not intend an absurd or unjust result. *Solon*, 236 Ill. 2d at 441. The result urged by the defendant in this case would give tenured faculty members priority over less senior tenured faculty members and faculty members who do not yet have tenure, while allowing colleges to replace them with employees with the least seniority—adjunct instructors. This would be an absurd result. We therefore reject both the defendant's interpretation of the statute and its contention that the legislature implicitly ratified the *Biggiam* court's holding by subsequently amending the statute without changing the relevant language.

¶ 36    We hold that the phrase "employee[s] with less seniority" is not limited to tenured employees or employees eligible to attain tenure; rather, the phrase includes *all* employees with less seniority, including those with *no* seniority. Thus, it includes the adjunct instructors hired to teach the classes formerly taught by the plaintiffs in this case. We also hold that the plaintiffs have

16

bumping rights with respect to individual courses under the circumstances alleged here. We will therefore reverse the order of the trial court dismissing the plaintiffs' complaint.

¶ 37 The plaintiffs urge us to remand this matter with directions for the trial court to enter a writ of *mandamus* and to hold a hearing on the issue of damages only. We do not believe it would be appropriate to do so. Although we assume that all well-pled facts in the plaintiffs' complaint are true for purposes of a ruling on a motion to dismiss, it would be inappropriate for the trial court to enter a final judgment in the plaintiffs' favor without requiring the plaintiffs to prove those allegations. There may also be additional factual and legal questions for the court to resolve that were not raised in the defendant's motion to dismiss. We will therefore remand the matter for further proceedings on all issues.

¶ 38                                        III. CONCLUSION

¶ 39 For the foregoing reasons, we reverse the order of the trial court dismissing the plaintiffs' complaint. We remand for further proceedings consistent with this opinion.

¶ 40 Reversed and remanded.

¶ 41 JUSTICE WELCH, dissenting:

¶ 42 I respectfully disagree with my colleagues' interpretation of section 3B-5 of the Act (110 ILCS 805/3B-5 (West 2016)). Here, the plain language of the statute states that

> "any faculty member shall have the preferred right to reappointment to a position entailing
>
> services he is competent to render prior to the appointment of any new faculty member;
>
> provided that no non-tenure faculty member or other employee with less seniority shall be
>
> employed to render a service which a tenured faculty member is competent to render." *Id.*

¶ 43 The majority finds that this language in the statute includes adjunct instructors. The majority's reasoning is based on the notion that the phrase "less seniority" includes faculty

17

members with no seniority because a person with no seniority by definition has less seniority than tenured faculty members. However, this reasoning ignores the fact that adjunct instructors do not accrue seniority and will therefore never have any more or less seniority, as they are hired on a year-by-year basis. It is clear from the plain language of the statute that it was meant to apply to those faculty members who are able to accrue any seniority and does not apply to the adjunct instructors.

¶ 44　　The majority distinguishes the Second District's decision in *Biggiam v. Board of Trustees of Community College District No. 516*, 154 Ill. App. 3d 627 (1987), and reverses the trial court. Though I agree with the majority that we are not bound by another appellate court district's ruling (see *People v. York*, 2016 IL App (5th) 130579, ¶ 25), we are bound by the plain language of the statute, which must be "afforded its *plain, ordinary, and popularly understood meaning*" (emphasis added) (*Alvarez v. Pappas*, 229 Ill. 2d 217, 228 (2008) (citing *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 279 (2003))). The trial court properly and accurately applied the plain language of the statute. Moreover, I disagree with the plaintiffs that this application of the statute would evade the purposes of tenure, as the defendant is merely trying to continue to provide education in light of the budget crisis. I would therefore affirm the trial court's granting of the defendant's motion to dismiss.

2019 IL App (5th) 180284

NO. 5-18-0284

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| CHERYL BARRALL, JANE BEYLER, NIKKI BORRENPOHL, DAVID COCHRAN, DAVID EVANS, MOLLY GROOM ALTER, and JENNIFER WATKINS, | ) ) ) ) | Appeal from the Circuit Court of Williamson County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 17-MR-275 |
| THE BOARD OF TRUSTEES OF JOHN A. LOGAN COMMUNITY COLLEGE, | ) ) ) | Honorable Brad K. Bleyer, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

**Opinion Filed:**       September 12, 2019

_____

**Justices:**       Honorable Melissa A. Chapman, J.

        Honorable David K. Overstreet, P.J., concurred
        Honorable Thomas M. Welch, J., dissented

_____

**Attorney for Appellants**       Loretta K. Haggard, Schuchat, Cook & Werner, 1221 Locust Street, Suite 250, St. Louis, MO 63103

_____

**Attorneys for Appellee**       Don E. Prosser, Rhett T. Barke, Gilbert, Huffman, Prosser, Hewson & Barke, Ltd., 102 Orchard Drive, P.O. Box 1060, Carbondale, IL 62903-1060

_____